IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RUFUS WHITFIELD,                    :    CIVIL ACTION
                                    :    NO. 08-417
          Plaintiff,               :
                                    :
          v.                        :
                                    :
CITY OF PHILADELPHIA                :
and LYNN ABRAHAM                    :
and CATHERINE MARSHALL,             :
                                    :
          Defendants.              :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         NOVEMBER 19, 2008

          Before this Court are Rufus Whitfield's 42 U.S.C. §
1983 ("Section 1983") claims against the City of Philadelphia,
Lynne Abraham ("Abraham"), the Philadelphia District Attorney,
and Catherine Marshall ("Marshall"), Chief of the Appeals Unit of
the Philadelphia District Attorney's Office (collectively
"Defendants").  Whitfield contends that Defendants' decision to
appeal the vacatur of his illegal prison sentence on "technical
procedural grounds" violated his constitutional rights under the
Fifth, Eighth, and Fourteenth Amendments.  Defendants filed the
instant motion to dismiss Whitfield's complaint for failure to

state a claim upon which relief could be granted.[1]  Defendants'
motion will be granted.


I.   BACKGROUND[2]

On May 12, 1992, Rufus Whitfield pleaded guilty to
various theft related offenses and was sentenced in the Court of
Common Pleas, Philadelphia County to a term of imprisonment and
parole/probation.  (Complaint ¶ 4; Commonwealth v. Whitfield, CP
9106-2344 (Phila. Ct. Com. Pl. May 1, 2003)("Lynn Op.") 2.)
After serving a portion of that sentence, Whitfield was released
on parole.  On February 19, 1997, however, Whitfield's parole was
revoked and he was ordered to serve the balance of his May 1992
sentence.  (Lynn Op. at 1-2.)  At that time, the sentencing judge

_____

[1]      On January 28, 2008, Whitfield filed his initial
complaint in this action.  Defendants moved to dismiss that
complaint on March 26, 2008.  On May 1, 2008, the Court held a
hearing to consider a number of outstanding motions, including
Defendants' motion to dismiss and Whitfield's motion to amend his
complaint.  At the conclusion of that hearing, the Court denied
Defendants' motion to dismiss without prejudice and granted
Whitfield's motion to amend his complaint.  On May 2, 2008,
Whitfield filed his Second Amended Complaint.  Defendants moved
to dismiss the Second Amended Complaint on May 12, 2008.  To
clarify, the Court's references herein to the "complaint" are to
the Second Amended Complaint.

[2]      Where possible, the Court relied on the complaint for a
recitation of the facts.  However, in an effort to construct the
most complete version of the complex facts surrounding
Whitfield's claims, the Court also relied upon record documents
and state court opinions, which were submitted to the Court by
both parties.

acknowledged that Whitfield's term of probation "maxes out on January 8, 1998."  (Complaint ¶ 5; Defs.' Mot. Dismiss Ex. 2.)

On September 26, 2001, Whitfield was back before the Court of Common Pleas, Philadelphia County, charged with probation/parole violation resulting from his conviction for the unauthorized use of a motor vehicle.  On that day, Whitfield was sentenced to a three and one half to seven year term of imprisonment for the probation/parole violation.  (Complaint ¶ 7; Lynn Op. at 2.)  At the time of Whitfield's sentencing, the sentencing judge, Judge Lynn, was unaware that the term of probation, which formed the underlying basis for the three and one half to seven year sentence, had in fact expired more than three years earlier, on January 8, 1998.  (Complaint ¶ 7.)[3]

Whitfield's subsequent motion to vacate the September 26, 2001 sentence on the grounds of illegality was denied on March 28, 2002.[4]  (Lynn Op. at 2; Defs.' Mot. Dismiss at 3.) Whitfield filed a timely appeal to the Pennsylvania Superior

_____

[3]     In fact, it is not clear from the record that Whitfield was ever sentenced to a term of probation on the precise docket numbers that were at issue during the September 26, 2001 hearing. See Pa. v. Christopher Holmes & Rufus Whitfield, 933 A.2d 57, 63 (Pa. 2007) (noting that "the court entered an order revoking Whitfield's 'probation' on the original sentence imposed at CP# 9106-2343 and 9106-2344 and sentencing him to three and one half to seven years of incarceration" but "probation had never been imposed for those charges").

[4]     Defendants note that, prior to filing his unsuccessful motion to vacate, Whitfield also filed an "untimely motion to reconsider sentence," which was denied.  (Defs.' Mot. Dismiss at 3.)

Court.  (Lynn Op. at 2.)  Upon learning of Whitfield's appeal,
Judge Lynn ordered that testimony from Whitfield's sentencing
proceedings in 1992, 1997, and 2001 be transcribed.  (Lynn Op. at
2-3.)  On May 24, 2002 and June 10, 2002, while Whitfield's
appeal to the Pennsylvania Superior Court was pending, attorneys
from the Defenders Association of Philadelphia wrote to Judge
Lynn claiming that Whitfield was being illegally detained.
(Complaint ¶ 9; Lynn Op. at 2.)[5]

On September 30, 2002, Judge Lynn received the notes of
testimony from the February 19, 1997 sentencing hearing.
(Complaint ¶ 10.)  Upon receiving these notes, the Judge ordered
them faxed to the District Attorney's Office, along with copies
of the May 24, 2002 and June 10, 2002 letters from Whitfield's

_____

[5]     The parties dispute whether or not the District
Attorney's Office also received a copy of the May 24, 2002
letter.  According to Whitfield, the May 24, 2002 letter from his
attorneys was "copied to the District Attorney's Office of
defendant city." (Complaint ¶ 9.)  Judge Lynn is even more
specific, noting that the May 24, 2002 letter from Whitfield's
attorneys was "carbon copied to Andrea Feeney, Assistant District
Attorney." (Lynn Op. at 3.)  However, the District Attorney's
Office denies ever receiving the letter and observes that
although "Judge Lynn indicates [in his opinion] that the Public
Defenders sent copies of correspondence to Assistant District
Attorney Andrea Feeney . . . no prosecutor with that name worked
in this office at the time (or since)." (9/8/08 Letter from
Assistant District Attorney K. Jordan to the Court.)  For the
purposes of deciding the instant motion, the Court views all of
the allegations in the complaint in the light most favorable to
Plaintiff, and assumes that Defendants received a copy of the May
24, 2002 letter.

With respect to the June 10, 2002 letter, Judge Lynn
acknowledges that it "was not copied to the District Attorney's
Office" and Whitfield fails to mention it in his complaint.

- 4 -

attorneys.  These materials were "faxed to Jim Lawrenson, a paralegal in the appeals unit of the District Attorney's Office" with a note that "directed the District Attorney's Office to inform [the] Court of their position in this matter as soon as possible."  (Lynn Op. at 3; Complaint ¶ 10.)  In a subsequent opinion, Judge Lynn noted that his chambers [was] made aware, via telephone, that Catherine Marshall, Chief, Appeals Unit of the District Attorney's Office, was given the . . . fax by Mr. Lawrenson."  (Lynn Op. at 3; Complaint ¶ 11.)[6]

On October 10, 2002, Judge Lynn issued an order vacating Whitfield's September 26, 2001 sentence, noting that at the time of the sentencing, "this court inadvertently believed the defendant [Whitfield] was still on its probation.  This court has recently obtained the notes of testimony from February 19, 1997 hearing wherein it is indicated that defendant [Whitfield] would be finished with the courts probation on January 8, 1998 . . . . the sentence imposed by this court upon defendant [Whitfield] on September 26, 2001 is therefore illegal and is vacated."  (Complaint ¶ 14, Ex. A.)  On October 18, 2002,

---

[6]     The District Attorney's Office denies that Ms. Marshall received the fax from Judge Lynn's chambers, see Hr'g Tr. at 13:4-8, May 1, 2008, but argues that its appeal of the vacatur of Whitfield's sentence was proper, regardless (9/8/08 Letter from Assistant District Attorney K. Jordan to the Court).  Again, for the purposes of deciding the instant motion, the Court views all of the allegations in the complaint in the light most favorable to Plaintiff, and assumes that Defendants received the fax from Judge Lynn's chambers.

Whitfield withdrew the pending appeal of his sentence in the Pennsylvania Superior Court.  (Defs.' Mot. Dismiss Ex. 4.)

The District Attorney's Office appealed the October 10, 2002 vacatur to the Pennsylvania Superior Court, arguing that the order was a "nullity" because the trial court acted without proper jurisdiction.  (Id.)  On August 22, 2003, the Pennsylvania Superior Court affirmed the trial court's decision to vacate Whitfield's sentence.  (Id. Ex. 6.)  The District Attorney's Office then petitioned the Pennsylvania Supreme Court for an allowance of appeal, which was granted on April 7, 2004.  (Id. Ex. 7.)  The Pennsylvania Supreme Court heard argument in the case on October 12, 2004, but did not render its decision until October 16, 2007.  A deeply divided Court held that while the trial court lacked jurisdiction to vacate Whitfield's sentence, the vacatur was proper given the trial court's inherent power to correct patent and obvious mistakes.  Pa. v. Christopher Holmes & Rufus Whitfield, 933 A.2d 57, 66 (Pa. 2007).[7]  In so holding, the Court recognized the tension between 42 Pa.C.S. § 5505, which provides a limited 30-day window during which a trial court has

---

[7]     Recognizing "a conflict in the application of authorities when trial courts attempt to exercise their inherent power to correct orders by vacating illegal sentences despite the expiration of the modification period provided by 42 Pa.C.S. § 5505," the Pennsylvania Supreme Court consolidated Whitfield's case with that of Christopher Holmes.  The facts of Holmes' case are remarkably similar to Whitfield's, although in Holmes' case, the Pennsylvania Superior Court reversed the trial court's vacatur of Holmes' sentence, citing its lack of jurisdiction.

jurisdiction to modify or rescind an order (provided that the order in question has not been appealed), and the inherent power of the court to correct patent errors of law.  Id.  From the date of the first appeal by the Philadelphia District Attorney's Office of the October 10, 2002 vacatur order, to the day of the Pennsylvania Supreme Court's decision on October 16, 2007, Whitfield remained incarcerated.[8]

In Counts One and Two of his Second Amended Complaint, Whitfield alleges that both Abraham and Marshall are liable as supervisors[9] under Section 1983 for acting "under color of state

---

[8]     Pursuant to Rule 1736(b) of the Pennsylvania Rules of Appellate Procedure, an appeal acts as an automatic supersedeas in favor of the appealing party.  In this instance, the District Attorney's appeal of the vacatur stayed the October 10, 2002 order that would have released Whitfield from prison.  See Hr'g Tr. at 7:13-24, May 1, 2008.  Whitfield appealed the automatic supersedeas and sought immediate release from custody, but his request was denied by the Pennsylvania Supreme Court in 2004. (Defs.' Mot. Dismiss Ex. 7.)

[9]     Although the headings in Whitfield's complaint explicitly allege supervisory liability under Section 1983, the allegations in the complaint are not as clear.  For example, Whitfield alleges that Abraham and Marshall were "personally involved" in the violation of his constitutional rights (Complaint ¶¶ 36, 54), and that they were both "final policymaker[s]" (Complaint ¶¶ 44, 62).  Plaintiff's communication to the Court has been equally muddled.  See Hr'g Tr. at 7:18-20, Sept. 5, 2008 ("Our new counts in the new complaint are specifically supervisory liability counts under Section 1983"); id. at 8:16-23 ("[W]e allege that she [Marshall] is the policy maker, and we really should have said alternatively that she is a supervisor, because supervisory liability doesn't have to apply to a policy maker, but I think it can be implied clearly in the complaint that she was a supervisor"); id. at 22:9-11 ("It is clear that we implied that Catherine Marshall was a supervisor as well as policy maker, but we believe she is a policy maker.")

law" to "continue[] criminal prosecutions against the plaintiff
on charges of probation and/or parole violations after receiving
notice that said charges were unfounded" (Complaint ¶¶ 43, 61),
and for following a policy of "failing to correct [the]
unconstitutional conduct of their subordinates" (id. ¶¶ 41, 59).
In addition, Whitfield alleges that Abraham and Marshall "failed
in their duty to investigate" his illegal incarceration and
"instead made the unlawful administrative decision to continue to
prosecute the matter and to appeal the Court's Order of October
10, 2002 on technical procedural grounds knowing that, as a
result, they would directly cause plaintiff to remain
incarcerated in violation of his Constitutional rights." (Id. ¶
20.)[10]  In Count Three of the Complaint, Whitfield alleges that
the City of Philadelphia is liable under Monell v. Dep't of Soc.
Servs., 436 U.S. 658 (1978), for establishing a "policy and
practice" of "prosecut[ing] persons with suspected probation

---

        In the context of the instant motion, the Court will
construe the facts in the light most favorable to Plaintiff and
assume that he is alleging liability under the broadest theory
possible.  Thus, the Court will consider whether Abraham and
Marshall are liable first as individuals, then as supervisors,
and then as policymakers for the conduct alleged in the
complaint.

        [10]    Plaintiff alleges a litany of constitutional violations
as a result of Defendants' conduct, including violations of the
Fifth Amendment's double jeopardy clause, the Fifth and
Fourteenth Amendments' due process clause, and the Eighth
Amendment's prohibition against cruel and unusual punishment.
See Pl.'s Opp'n Defs.' Mot. Dismiss at 2 & n.1 (citing Complaint
¶¶ 16, 32, 46).

and/or parole violations in a reckless manner" and "encourag[ing] its employees to prosecute its cases without regards for the civil rights of persons."  (Complaint ¶¶ 70, 73.)

Defendants argue that Abraham and Marshall are shielded from liability in their individual capacities by "the doctrine of absolute prosecutorial immunity" because the appeal at issue was unquestionably related to their role as advocates, not administrators.  (Defs.' Mot. Dismiss at 16.)  Defendants also argue that this absolute prosecutorial immunity bars any finding of supervisory liability against Abraham and Marshall.  (Id. at 16-17.)  Moreover, Defendants contend that, even in the absence of absolute immunity, Abraham and Marshall are entitled to qualified immunity for their decision to appeal the vacatur. (Id. at 18.)  Finally, Defendants argue that the allegations in the complaint are insufficient to state a claim for municipal liability against the City of Philadelphia.  (Id. at 21.)


II.   LEGAL STANDARD

    A.   Motion to Dismiss under Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."

DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d
Cir. 2007) (quotation omitted); Maisonet v. City of Phila., No.
06-4858, 2007 WL 1366879, at *4 (E.D. Pa. May 7, 2008) (granting
motion to dismiss on absolute prosecutorial immunity grounds).
The Court need not, however, "credit either bald assertions or
legal conclusions in a complaint when deciding a motion to
dismiss." DeBenedictis, 492 F.3d at 215 (quoting Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005)).  Rather, for the
purposes of Rule 12(b)(6), the complaint's factual allegations
"'must be enough to raise the right to relief above the
speculative level.'" Phillips v. County of Allegheny, 515 F.3d
224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 127
S. Ct. 1955, 1965 & n.3 (2007)).


   B.   Section 1983

        Section 1983 of Title 42 of the United States Code
provides a cause of action for an individual whose constitutional
or federal rights are violated by those acting under color of
state law.[11]  See generally Gonzaga Univ. v. Doe, 536 U.S. 273,

---

     [11]    "Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State or
Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws,
shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress . . . ."  42
U.S.C. § 1983.

284-85 (2002) (recognizing that Section 1983 provides a remedy for violations of individual rights "secured by the Constitution and laws" of the United States).  Here, Defendants do not dispute that the conduct complained of occurred "under color of state law."[12]

III. DISCUSSION

    A.   <u>Individual Liability of Abraham and Marshall</u>[13]

        It is well settled that individual prosecutors are entitled to absolute immunity from Section 1983 liability for any action performed pursuant to their judicial or quasi-judicial function as advocates for the state.  Recently, the Third Circuit rehearsed the guiding principles which govern the application of absolute immunity to the conduct of individual prosecutors.

> A prosecutor bears the "heavy burden" of establishing entitlement to absolute immunity.  <u>Light v. Haws</u>, 472 F.3d 74, 80-81 (3d Cir. 2007) (quoting <u>Forsyth v. Kleindienst</u>, 599 F.2d 1203, 1212 (3d Cir. 1979)).  In light of the Supreme Court's "quite sparing" recognition of absolute immunity to § 1983 liability, we begin with the presumption

_____

[12]    Defendants do not concede, however, that the conduct alleged in Whitfield's complaint constitutes a constitutional violation.  (Defs.' Mot. Dismiss at 17.)

[13]    The Court will assume that Whitfield is suing Abraham and Marshall in their individual capacities.  A claim against a city official in her official capacity is no different than a claim against the municipality.  Kentucky v. Graham, 473 U.S. 159, 166 (1985); Cruz v. City of Phila., No. 07-493, 2007 WL 4190690, at *4 (E.D. Pa. Nov. 21, 2007).  As Whitfield is also suing the City of Philadelphia, claims against the individual defendants in their official capacity would be redundant and subject to dismissal.  Cruz, 2007 WL 4190690 at *4.

- 11 -

that qualified rather than absolute immunity is appropriate. Carter v. City of Philadelphia, 181 F.3d 339, 355 (3d Cir. 1999) (citing Burns v Reed, 500 U.S. 478, 486-87, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991)).

To overcome this presumption, a prosecutor must show that he or she was functioning as the state's advocate when performing the action(s) in question.  Yarris, 465 F.3d at 136. This inquiry focuses on "the nature of the function performed, not the identity of the actor who performed it." Light, 472 F.3d at 78 (quoting Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001)).  Under this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity.  Giuffre, 31 F.3d at 1251 (quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)); Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989).  Thus, immunity attaches to actions "intimately associated with the judicial phases of litigation," but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.  Giuffre, 31 F.3d at 1251 (quoting Imbler, 424 U.S. at 430) (internal quotation omitted); see also Rose, 871 F.2d at 346 (contrasting the prosecutor's "quasi-judicial" role from his "administrative/ investigative" role).

Odd v. Malone, 538 F.3d 202, 207-08 (3d Cir. 2008).  Thus, the test is whether based on the unique facts of the case, the conduct of the prosecutor was "'quasi judicial,' and entitled to absolute immunity, or 'administrative or investigatory,' and not so entitled."  Id. at 208 (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994); Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989)).

While there is no bright-line rule that dictates whether a prosecutor's conduct is "intimately associated with the judicial phase of litigation," Odd, 538 F.3d at 210 (observing that the Third Circuit has rejected tests "that would treat the

- 12 -

timing of the prosecutor's action (e.g. pre- or post-indictment), or its location (i.e. in- or out-of-court), as dispositive"), courts have applied the doctrine of absolute prosecutorial immunity with particular force when the conduct at issue relates to the initiation of a prosecution, that is, in "deciding which suits to bring and in conducting them in court[,]" Imbler, 424 U.S. at 430.  The Third Circuit extends the protection even where prosecutions are brought in bad faith. Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992) (finding that "the decision to initiate a prosecution is at the core of the prosecutor's judicial role" and that "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred"); Ernst v. Child & Youth Servs., 108 F.3d 486, 503 (3d Cir. 1996).

With respect to post-conviction proceedings, the Third Circuit has held that "'absolute immunity applies to the adversarial acts of prosecutors during post-conviction proceedings . . . where the prosecutor is personally involved . . . and continues his role as an advocate.'"[14]  Yarris v. County of Del., 465 F.3d 129, 137 (3d Cir. 2006); see also Byrd v. Parris, No. Civ. A. 99-769, 1999 WL 895647, at *4 (E.D. Pa. Oct. 15,

---

[14]    Notably, Whitfield alleges that Abraham and Marshall were personally involved in the violation of his constitutional rights in that they "made" the decision to appeal the October 10, 2002 vacatur of his sentence.  (Complaint ¶ 26.)

- 13 -

1999) (finding that prosecutors were entitled to absolute immunity for conduct during appeal); <u>Parkinson v. Cozzolino</u>, 238 F.3d 145, 151 (2d Cir. 2001) (noting that there is "no meaningful distinction between the role of a prosecutor in obtaining a conviction and the role of a prosecutor in striving to uphold that conviction on appeal or to obtain a new conviction upon re-trial"); <u>Carter v. Burch</u>, 34 F.3d 257, 263 (4th Cir. 1994) (holding that prosecutor who was functioning as an advocate for the state in post-conviction proceedings was absolutely immune from Section 1983 liability); <u>Joseph v. Patterson</u>, 795 F.2d 549, 557 (6th Cir. 1986), <u>abrogated on other grounds by</u> <u>Kalina v. Fletcher</u>, 522 U.S. 118 (1997) (observing that the rationale behind absolute immunity at the trial level "applies equally" to appeals).  In fact, the Court has been unable to find any case holding that a prosecutor's conduct in initiating an appeal is "administrative" or "investigatory" such that it is not absolutely immune from Section 1983 liability.

Thus, to the extent that Whitfield bases his claim on Abraham's or Marshall's direct involvement in the decision to appeal the October 10, 2002 vacatur of his sentence, he fails to state a claim upon which relief can be granted.  Such decision by Abraham or Marshall stands at the core of the prosecutorial function, and constitutes "quasi-judicial" conduct, for which they are both afforded absolute immunity.

B.   Supervisory Liability of Abraham and Marshall

Under Section 1983, a supervisor may be liable for her failure to train or supervise her employees where "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  The Third Circuit has clarified that "deliberate indifference" may exist where "the need for more or different training is obvious and inadequacy very likely to result in violation of constitutional rights." Id.; see also McKinney v. Passaic County Prosecutor's Office, No. 08-3149 (PGS), 2008 WL 4104448, at *5 (D. N.J. Sept. 3, 2008) (noting that liability may attach where "the failure to train or supervise can fairly be said to represent official policy").  If deliberate indifference is proven, a plaintiff must then demonstrate that the failure to supervise resulted in the constitutional violation at issue in the complaint.  Carter, 181 F.3d at 357 n.61.

To state a claim for supervisory liability under Section 1983, a plaintiff must "not only identify a specific supervisory practice that the defendant failed to employ, he or she must also allege 'both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's

inaction could be found to have communicated a message of approval." <u>C.H. ex rel. Z.H. v. Olivia</u>, 226 F.3d 198, 202 (3d Cir. 2000) (quoting <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d. 20, 25 (3d Cir. 1997)).

As an initial matter, Whitfield's complaint does not state a claim for supervisory liability against Abraham or Marshall because it does not identify any specific supervisory practice that Abraham or Marshall failed to employ in connection with the decision to appeal the vacatur of his sentence.  Rather, the complaint states only that "Defendants Abraham and Marshall failed in their duties to set policies and procedures to instruct, teach and/or otherwise direct their subordinates to avoid violations of the Constitution including but not limited to its protection against double jeopardy."  (Complaint ¶ 22.)  As a matter of substantive law, this is insufficient.  <u>See</u> <u>C.H. ex rel. Z.H.</u>, 226 F.3d at 202; <u>e.g.</u>, Cruz v. City of Phila., No. 07-493, 2007 WL 4190690, at *3 (E.D. Pa. Nov. 21, 2007) (dismissing Section 1983 claim for supervisory liability where plaintiff's complaint "does not allege any specific supervisory practice that Abraham failed to employ in connection with the decision to prosecute").

Additionally, the complaint does not aver that a failure by Abraham or Marshall to supervise their subordinates resulted in the violation of Whitfield's constitutional rights.

- 16 -

To the contrary, Whitfield alleges that <u>Abraham and Marshall</u>
<u>themselves</u> violated his constitutional rights.  (Complaint ¶ 24
("[D]efendants engaged in a continuing violation of plaintiff's
constitutional rights by proceeding with the prosecution of the
case even after the Superior Court decision."))  In light of
these allegations, the mere incantation of the term "instruct,
teach and/or otherwise direct" in Whitfield's complaint does not
automatically convert the claim of a direct violation by Abraham
and Marshall into one of supervisory liability.  <u>See, e.g.,</u>
<u>Williams v. Fedor</u>, 69 F. Supp 2d 649, 663-64 (M.D. Pa. 1999)
(rejecting plaintiff's "failure to supervise" claim where
plaintiff was really complaining about the conduct of the
District Attorney, not his subordinates, and noting that "[t]he
bar to municipal liability when a district attorney acts in a
prosecutorial capacity cannot be so easily circumvented").

          Moreover, the supervisory conduct alleged against
Abraham and Marshall - namely, their failure to "instruct, teach
and/or otherwise direct their subordinates to avoid violations of
the Constitution" in pursuing the appeal of an illegal sentence
on technical procedural grounds - cannot fairly be called
"administrative."  Rather, Abraham's and Marshall's supervision
or instruction of subordinates to pursue an appeal is quasi-
judicial conduct which, as discussed above, is "intimately

associated with the judicial phases of litigation."[15]  Thus, Abraham and Marshall are entitled to absolute immunity in this instance.  Carter, 181 F.3d at 353 (implying that policies related to "whether and how to prosecute violations of state law" are prosecutorial rather than administrative).[16]

Furthermore, even if absolute prosecutorial immunity is not available to Abraham and Marshall for their alleged failure to "instruct, teach and/or otherwise direct their subordinates to avoid violations of the Constitution," qualified immunity may still bar Whitfield's Section 1983 claims for supervisory

---

[15]  Plaintiff cites Carter v. City of Phila., 181 F.3d 339 (3d Cir. 1999), for the proposition that policies relating to training, supervision and discipline are administrative rather than prosecutorial.  (Pl.'s Opp'n Defs.' Mot. Dismiss at 11.) This reading of Carter is too broad.  In Carter, the Third Circuit undertook a functional analysis of a prosecutor's implemented policy concerning police investigations and concluded that the specific policies at issue related to "training, supervision and discipline" and not "whether and how to prosecute violations of state law."  Carter, 181 F.3d at 343, 353. Notably, the underlying policies at issue in Carter related to police investigations, conduct that the Supreme Court had previously been held to have been outside the scope of prosecutorial immunity.  Id. at 356 n.58; see Burns v. Reed, 500 U.S. 478, 495 (1991).  Carter did not provide an avenue through which plaintiffs can render inapplicable the absolute protection enjoyed by prosecutors, simply by pleading a claim for failure to train, supervise and discipline.

[16]  In so holding, the Court is aware that the Supreme Court recently granted certiorari to a Ninth Circuit case, Van De Kamp v. Goldstein, 128 S. Ct. 1872, 2008 WL 1699467 (Apr. 14, 2008), to review whether a supervising prosecutor's policy decisions, and their training and supervision of line prosecutors' compliance with Brady and Giglio obligations, constitutes quasi-judicial conduct such that the supervising prosecutors are afforded the protection of absolute immunity.

liability.[17]  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).  Such immunity is appropriate where a prosecutor's conduct is "objectively reasonable in light of the constitutional rights affected."  <u>Odd</u>, 538 F.3d at 217; <u>see</u> <u>Carter</u>, 181 F.3d at 356.

Pursuant to the test articulated by the Supreme Court in <u>Saucier</u>, courts must engage in a two-tiered analysis to determine whether a Section 1983 defendant is entitled to qualified immunity.  First, the court must determine whether "'[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right[.]'"  <u>Hubbard v. Taylor</u>, 538 F.3d 229, 231 (3d Cir. 2008) (quoting <u>Saucier</u>, 533 U.S. at 201).  Second, if the answer is yes, the court must then determine "'whether the right was clearly established.'" <u>Id.</u>  In considering the second prong of the <u>Saucier</u> test, the Third Circuit clarified that "[a] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand

---

[17]    Plaintiff argues that "[t]his is not the appropriate time to consider" whether qualified immunity shields Abraham and Marshall from suit.  (Pl.'s Opp'n Defs.' Mot. Dismiss at 13.)  On the contrary, questions of prosecutorial immunity are "properly raised in a Rule 12(b)(6) motion to dismiss."  <u>Odd</u>, 538 F.3d at 207.

that what he is doing violates that right.'" <u>Hubbard</u>, 538 F.3d
at 236 (quoting <u>Williams v. Bitner</u>, 455 F.3d 186, 191 (3d Cir.
2006)).  This standard "'gives ample room for mistaken judgments
by protecting all but the plainly incompetent or those who
knowingly violate the law.'" <u>Id.</u> (quoting <u>Gilles v. Davis</u>, 427
F.3d 197, 207 (3d Cir. 2005)).

        In his complaint, Whitfield avers a "kitchen sink" of
constitutional violations, but fails to allege adequately that it
was Defendants' conduct in supervising the appeal of Judge Lynn's
October 10, 2002 vacatur that violated his constitutional rights.
This infirmity is not one of detail but rather one of substance
in failing to allege a constitutional violation at all.[18]  In
fact, Whitfield repeatedly acknowledges that Defendants' pursuit
of an appeal in this instance was lawful.  <u>See</u> Hr'g Tr. at 12:3-
5, Sept. 5, 2008 ("I'm not saying that the appeal is unlawful,
Your Honor, I would not go to that in that regard"); Pl.'s Opp'n
Defs.' Mot. Dismiss at 17 (conceding that while Whitfield's
imprisonment was "unquestionably illegal," Defendants' appeal of
the October 10, 2002 vacatur "may have had some legal merit").
In short, Whitfield's claims for supervisory liability under

---

        [18]    The Court is mindful that there is no heightened
pleading requirement for Section 1983 cases and that "a plaintiff
has no pleading burden to anticipate or overcome a qualified
immunity defense, and a mere absence of detailed factual
allegations supporting plaintiff's claim for relief under § 1983
does not warrant dismissal of the complaint or establish
defendants' immunity."  <u>Thomas v. Independence Twp.</u>, 463 F.3d
285, 289 (3d Cir. 2006).

Section 1983 do not "allege[] facts that amount to a constitutional violation." Sands v. McCormick, 502 F.3d 263, 270 (3d Cir. 2007) (affirming the dismissal of Section 1983 claims against a District Attorney where plaintiff failed to state a constitutional violation and noting that "[t]he miscommunication here had unfortunate results. Criminal procedures are often harsh and mistakes can be made, but that does not make the process unconstitutional per se").[19]  Given that there is no allegation of a constitutional violation, Abraham and Marshall are entitled to qualified immunity.  See, e.g., Miller v. Clinton County, 544 F.3d 542, 553 (3d Cir. 2008) (finding that where plaintiff failed to allege a constitutional violation, defendant was entitled to qualified immunity).[20]

---

[19]    In Sands, the Third Circuit also rejected plaintiff's claim that "the district attorney should not have pursued the prosecution [against her] because as a lawyer he knew that the statute of limitations had expired."  520 F.3d at 273.  Noting that the initial "charges were based on probable cause," the Sands court affirmed the district court's finding of prosecutorial immunity.  Id.

[20]    Where a plaintiff fails to plead facts that allege a constitutional violation, the Court need not address the second prong of Saucier.  See Wright v. City of Phila., 409 F.3d 595, 600 (3d Cir. 2005) (noting that "if no constitutional violation is found, a court need not address whether a reasonable officer would have known he or she was violating a clearly established right"); Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")   However, the Court notes that even if Whitfield's complaint pleaded a constitutional violation, under the facts alleged, Defendants would be entitled to qualified immunity under the second prong of Saucier because a reasonable official would not have understood that appealing the trial court's October 10,

C.    <u>Policymaker Liability of Abraham and Marshall</u>

In the complaint, Whitfield alleges that Abraham and Marshall are liable as "policymakers" under Section 1983 because they employed a policy or custom of appealing vacaturs on "technical procedural grounds" with "callous disregard for, and deliberate indifference" to individuals' constitutional rights. (<u>See, e.g.</u>, Complaint ¶¶ 41, 42, 44, 46, 53, 55, 59, 60, 62.)  As an initial matter, the Court notes that the standard of liability for individual policymakers under Section 1983 is the same as the standard for municipalities.  <u>Carter</u>, 181 F.3d at 356.  Whitfield must demonstrate that the policy or the custom at issue violated his constitutional rights and was the proximate cause of his injury.  <u>Watson v. Twp.</u>, 478 F.3d 144, 155 (3d Cir. 2007); <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (noting

―――――――――――――――

2002 vacatur violated Whitfield's constitutional rights.  Indeed, the opposite is true.

First, the Supreme Court of Pennsylvania granted the District Attorney's motion for allocatur, thereby suggesting an unresolved question of law existed.  Second, the case was ultimately consolidated with that of another criminal defendant who had his case decided in the alternative by the Superior Court of Pennsylvania; that is, the Superior Court held that the trial court erroneously vacated his sentence because it did not have jurisdiction.  Third, the Pennsylvania Supreme Court was deeply divided in deciding the case; of the seven justices who heard the case, two joined the majority opinion, two justices wrote separate concurring opinions, and one justice wrote a dissenting opinion with which one justice joined.

These facts support that Defendants' decision to appeal did not violate a clearly established right, but rather was a proper exercise of prosecutorial discretion, which sought to clarify a contested issue of jurisdiction in the lower courts.

that "proof of the mere existence of an unlawful policy or custom is not enough to maintain a Section 1983 action").

For the purposes of Section 1983, the Third Circuit has recognized the existence of a "policy" where "'a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict.'" Watson, 478 F.3d at 155 (quoting Bielevicz, 915 F.2d at 850 (internal quotations omitted)).  A custom is established by showing that the defendant knew about, and acquiesced to, a practice.  Watson, 478 F.3d at 156; see also Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (noting that proof of an unconstitutional policy or custom "typically requires proof of a pattern of unconstitutional violations").

In addition, regardless of whether the conduct at issue constituted policy or a custom, policymaking liability is only appropriate if Whitfield can demonstrate that Defendants had "'final, unreviewable discretion to make a decision or take an action.'"  Watson, 478 F.3d at 156 (quoting Andrews v. City of Phila., 895 F.2d. 1469, 1481 (3d Cir. 1990)).

Given that Abraham, the District Attorney, undeniably is the highest policymaker within the office, the question is whether an allegation of policymaker liability allows a plaintiff to bypass the absolute immunity enjoyed by prosecutors for "quasi judicial" conduct at the motion to dismiss stage.  In other

words, may a plaintiff by alleging policymaker liability do indirectly that which the doctrine of absolute immunity bars him from doing directly.

The case of <u>Eisenberg v. Dist. Attorney for the County of Kings</u> is instructive.  847 F.Supp. 1029 (E.D.N.Y. 1994). There, the court considered whether a District Attorney's alleged policy of prosecuting sex crimes, notwithstanding a "total lack of supporting evidence," was entitled to absolute immunity.   The <u>Eisenberg</u> Court held that there was no meaningful distinction between formulating a policy to prosecute a particular type of crime, and prosecuting an individual for that specific crime. The court concluded that, in terms of the public policy considerations supporting the application of the doctrine of absolute immunity, the District Attorney was absolutely immune. <u>Id.</u> at 1037 (holding the "mere characterization of [a] District Attorney's prosecutorial decision making as "policy" does not remove it from the ambit of absolute immunity").

<u>Eisenberg</u> relied on <u>Haynesworth v. Miller</u>, a case where the Court of Appeals for the District of Columbia held that the defendant prosecutor was absolutely immune for prosecuting an individual under a policy of pursuing criminal charges against individuals who had refused to waive civil suits against officers after enduring an unlawful arrest.  820 F.2d 1245, 1248 (D.C. Cir. 1987), <u>abrogated on other grounds by</u> <u>Hartman v. Moore</u>, 547

U.S. 250 (2006).  There, the Court stated that "the decision to focus prosecutorial energies upon particular cases of law violations or violators clearly bears many features in common with a decision to commence a single proceeding."  Id. at 1269.

The teachings of Eisenberg and Haynesworth are persuasive.  The policy and conduct that Whitfield is challenging here, i.e. appealing all cases where vacatur is entered on "technical procedural grounds," is virtually indistinguishable from the decision to appeal the vacatur in his case alone.  Thus, Abraham is entitled to absolute immunity and Whitfield's claims against her for policy making liability under Section 1983 will be dismissed.

The analysis with respect to Marshall is slightly different.  Although Whitfield alleges that Marshall is a "final policymaker" by virtue of her position as "Chief of the Appeals Unit" (Complaint ¶ 62), courts in this district have routinely held that Assistant District Attorneys cannot be policy makers for Section 1983 purposes because they lack unreviewable discretion as a matter of law.  See Jordan v. Appeldorn, No. Civ-A 00-1717, 2000 WL 1100786, at *3 (E.D. Pa. Aug. 1, 2000) (holding that an assistant district attorney in Philadelphia County was not a policymaker who can create or authorize official procedures or practices); Hull v. Mallon, No. 00-5698, 2001 WL 964115, at *2 (E.D. Pa. Aug. 21, 2001) (holding that as an

assistant district attorney, the defendant could not be held liable as a policy maker); Payson v. Ryan, No. 90-1873, 1992 WL 111341, at *11 (E.D. Pa. May 14, 1992) (holding that while the District Attorney may appoint assistants to assist him in the discharge of his duties, there is no indication in the law of Pennsylvania that those assistants have any policy making authority). Plaintiff does not cite any case to the contrary.

For these reasons, Marshall cannot be considered a policymaker and Whitfield's claims against her for conduct allegedly undertaken as a policymaker shall be dismissed.

        D.   <u>City of Philadelphia</u>

As mentioned above, a plaintiff can establish municipal liability under Section 1983 by demonstrating that a unconstitutional policy or custom proximately caused his injuries. Watson, 478 F.3d at 155-56. It is axiomatic that municipal liability "cannot be based on the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights." Id. at 155 (relying upon Monell, 436 U.S. 658, 691-95 (1978)). Importantly, when prosecuting crimes or "otherwise carry[ing] out policies established by the State," prosecutors are in fact acting as state officials. Carter, 181 F.3d at 353 (citing Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996)). It is only

when making administrative decisions that a prosecutor is acting as a county official.  Id.  Thus, a municipality can only be held liable for the acts of its officials undertaken in an administrative capacity.  Williams, 69 F. Supp 2d at 663.

Here, Whitfield alleges that "defendant City had established a policy to prosecute persons with suspected probation and/or parole violations in a reckless manner without regards for possible violations of an individual's constitutional rights."  (Complaint ¶ 70.)  According to the complaint, this policy was "ratified by defendants Abraham and Marshall who had served as the final official policymakers for the defendant City's District Attorney's Office and its Appeal Unit."  (Id. ¶ 75.)

These claims against the City of Philadelphia do not have merit.  As discussed above, Abraham's actions were undertaken in her role as a prosecutor, not as an administrator, and Marshall's actions cannot be attributed to the City of Philadelphia for the purposes of Section 1983 liability because she does not have final policymaking authority.  Just as this determination defeats the claims against the individual defendants, so too must the claims against the City of Philadelphia fail.[21]  Williams, 69 F. Supp 2d at 662 (holding

---

[21]    Further, Plaintiff has also failed to allege a pattern of constitutional violations caused by the alleged custom as required when proceeding under a policymaker theory of liability. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 408 (1997).  His

- 27 -

that "[t]he analysis in <u>Carter</u> supports the conclusion that the
County cannot be held liable on the basis of the challenged
'prosecutorial decisions'"); <u>see also</u> <u>Crawford v. Commonwealth of
Pa.</u>, No. 03-0693, 2006 WL 148881, at *4 (M.D. Pa. Jan. 19, 2006)
(noting that "under settled law it cannot be said that it was the
county's policy to repeatedly prosecute [Defendant], because when
a district attorney in Pennsylvania exercises his prosecutorial
discretion he is representing the state").  Thus, Whitfield's
Section 1983 claims against the City of Philadelphia shall be
dismissed.


IV.  CONCLUSION

          For these reasons, the defendants' motion to dismiss
shall be granted.  An appropriate order will issue.

---

only attempt was to point to Whitfield's companion case,
<u>Commonwealth v. Holmes</u>, 837 A.2d 501 (Pa. Super 2003), which, due
to shared similarities, was consolidated with his before the
Supreme Court of Pennsylvania.  However, the <u>Holmes</u> case reached
the Supreme Court after the Superior Court of Pennsylvania
concluded, contrary to its decision in Whitfield's case, that a
trial court without jurisdiction may <u>not</u> vacate a previously
imposed sentence.  As such, prior to the Supreme Court's
decision, there was at least one case in which the Superior Court
implicitly supported the arguments offered by the prosecutor's
office.  This fact necessarily compels a finding that there was
no likelihood that the custom in place would have yielded
constitutional violations.  <u>Bryan County</u>, 520 U.S. at 409.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUFUS WHITFIELD, | : | CIVIL ACTION |
| | : | NO. 08-417 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |
| | : | |
| Defendants. | : | |

## O R D E R

**AND NOW**, this **19th** day of **November, 2008,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Defendants' motion to dismiss (doc. no. 23) is **GRANTED**.  All of Plaintiff's claims as to all Defendants are hereby **DISMISSED with prejudice.**


AND IT IS SO ORDERED.


S/Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**